IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN F. MULLIN and DIANE L. MULLIN, individuals,<br><br>      Plaintiffs,<br><br><br><br><br><br><br><br><br><br>       vs.<br><br><br>TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Delaware corporation,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND FINDING MOOT DEFENDANT'S MOTION TO STRIKE<br><br><br><br><br><br>Case No. 2:05-CV-971 TS |

This matter is before the Court on Plaintiffs' Motion for Summary Judgment,[1]

Defendant's Motion for Summary Judgment,[2] and Defendant's Motion to Strike.[3]  A hearing was

held on the motions on March 20, 2007, after which the Court took them under advisement.

---

[1] Docket No. 23.

[2] Docket No. 27.

[3] Docket No. 33.

1

Having reviewed the pleadings, the file, and the case law, and having heard argument of counsel, the Court will grant summary judgment in favor of Plaintiffs and against Defendant, find moot Defendant's Motion to Strike, and close this case, for the reasons more fully set forth below.

BACKGROUND

In Plaintiffs' Amended Complaint,[4] they allege a single claim for declaratory relief in this indemnification case. Plaintiffs originally brought suit against a company called High Mountain, LLC d.b.a. High Mountain Properties, before Judge Sam (the related case).[5] After High Mountain failed to respond in that matter, the Court entered a default judgment.

The default judgment in the related case awarded the following: $120,017.64 for actual damages; $11,377.01 for interest on the above amount at prejudgment rate of 10% from January 1, 2003 to January 8, 2004; $251.72 for Plaintiffs' costs; and $2,666.00 for attorney's fees to date.[6]

High Mountain was insured by Defendant Travelers. Many months later, High Mountain moved to set aside the default judgment in the related case. The motion was denied as not timely. The matter was appealed, and the Tenth Circuit affirmed.

---

[4] Docket No. 6.

[5] Civil No. 2:03-CV-952 DS.

[6] The Court notes that any issue arising from High Mountain's bankruptcy potentially barring indemnification has been conceded by Defendant. Docket No. 28, at 5; *see also* Utah Code Ann. § 31A-22-201.

2

<u>DISCUSSION</u>

Plaintiffs assert that they are entitled to indemnification by Travelers for the default judgment in the related case, under a $1 million dollar commercial general liability insurance policy ("the Policy"), on behalf of its insured, High Mountain.  Defendant argues that it is not liable for the default judgment, because the claims are not covered by the Policy and/or exceed its scope and, even if the claims were covered, the failure of High Mountain to give timely notice to Defendant caused "substantial prejudice" and bars recovery under the Policy.

I.      Cross-motions for Summary Judgment.

        A.      <u>Summary Judgment Standard</u>.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7]  In reviewing the record, the Court views the evidence and draws any inferences therefrom in the light most favorable to the party opposing summary judgment.[8]  Conclusory allegations and subjective beliefs are insufficient to prevent the entry of summary judgment.[9]

---

[7] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8] *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 929 (10th Cir. 1994).

[9] *See Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000).

3

B.      Coverage under the Policy.

"Unless the language of an insurance contract is ambiguous or unclear, the court must construe it according to its plain and ordinary meaning."[10]  An insurance "policy is ambiguous only if it is not 'plain to a person of ordinary intelligence and understanding.'"[11] As an initial matter, the Court finds that the Policy at issue in this case is clear and unambiguous.

Among other things, the Policy provides that Defendant will pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that it will "have the right and duty to defend any 'suit' seeking those damages."[12]  Defendant argues that Plaintiffs' claims are either not covered by the Policy, or exceed its scope.

1.      Events outside the coverage period.

Defendant makes much of the statement in the Amended Complaint that certain personal property of Plaintiffs was taken from the condominium units "[d]uring the calendar year 2002." As the undisputed Policy effective dates were October 1, 2002 through October 1, 2003, it argues that that claimed loss may fall outside of the coverage period.  However, the Complaint in the related case stated that the claimed loss of the personal property occurred on December 13, 2002 – clearly within the coverage period.  Therefore, the Court finds that there is no disputed material fact with regard to this issue.

---

[10] *First Am. Title Ins. Co., v. J.B. Ranch, Inc.*, 966 P.2d 834, 836 (Utah 1998).

[11] *Id.* (internal citation omitted).

[12] Docket No. 26, Ex. 5.

2.    Policy's definition of "property damage."

The Policy at issue here covers "property damage," which is defined in Section I, ¶ 2 as either "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured."

Defendant argues that the Policy does not cover any lost revenue or profit from renting the condominiums units because it does not constitute physical injury to the property or loss of use of the property.  The cases cited in support of this proposition are inapposite and distinguishable, as they deal with intangible economic or consequential loss.

In this case, the default judgment in the related case arises from loss of contractually secured rental dollars which High Mountain failed to forward to Plaintiffs, and personal property which was stolen from Plaintiff's condominium units.  The rent dollars were hard and fast property items which had already been paid to High Mountain, and which should have been forwarded to Plaintiffs.  The losses were tangible.  Therefore, the Court finds, as a matter of law, that Plaintiff's claim falls under the Policy's definition of "property damage," because it constitutes a "[l]oss of use of tangible property that is not physically injured."

In the alternative, the Court finds that this provision of the Policy is ambiguous, and "Utah courts have stated that ambiguities are to be resolved in favor of the insured."[13]  "Contract language is considered ambiguous if the words used to express the meaning and intention of the parties are 'insufficient in a sense that the contract may be understood to reach two or more

---

[13] *Brigham Young Univ. v. Lumbermens Mut. Cas. Co.*, 965 F.2d 830, 835 (10th Cir. 1992) (citing *Fuller v. Dir. of Fin.*, 694 P.2d 1045, 1046 (Utah 1985)).

plausible meanings.'"[14]  Resolving the ambiguity of this provision against Defendant, and in favor of the insured (and, consequently, Plaintiffs), the Court finds that tangible property encompasses the losses claimed by Plaintiffs here.

    3. <u>Exclusion of contractual liability</u>.

   The relevant endorsement to the Policy states that the exclusion relating to contractual liability "does not apply to liability for damages: (1) that the insured would have in the absence of the contract or agreement; or (2) [that were] assumed in a contract or agreement that is an 'insured contract.'"[15]

   In this case, the insured had a duty not to retain Plaintiffs' rents or personal property, regardless of the existence of a contract or agreement.  High Mountain had no right to keep the rent monies, as they were part and parcel of Plaintiffs' ownership of the properties. Alternatively, an "insured contract" is defined by the Policy to include "a contract for a lease of the premises," which would apply to the Rental Management Agreement between Plaintiffs and High Mountain.  Accordingly, the Court finds, as a matter of law, the contractual liability exclusion does not prevent liability by Defendant in this case.

    4. <u>Coverage of intentional acts</u>.

   Defendant argues that the Policy does not cover losses which were "expected or intended," such as the alleged conversion of Plaintiff's personal property by High Mountain here.

---

[14] *Id.* (internal citation omitted).

[15] Docket No. 26, Exhibit 5 at II0088.

Defendant cites Section I, ¶ 12 of the Policy, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

However, Plaintiffs' underlying claims in the related civil case were also based upon "gross negligence."  Therefore, Defendant may not avoid coverage by asserting an exclusion based upon deliberate misconduct.[16]

     5.     "Care, custody and control" by the insured.

Defendant finally argues that Section I, ¶ 2j of the Policy excludes from coverage, property damage to "personal property in the care, custody or control of the insured" which, it argues, includes Plaintiffs' claims for personal property and money.  In this case, High Mountain did not exercise exclusive care, custody and control over Plaintiffs' property, nor was such an exercise integral to the services offered.[17]  Neither did High Mountain have "a proprietary interest in or derive monetary benefit from the property."[18]  The Court finds, as a matter of law, that the "care, custody and control" exclusion does not preclude coverage in this case.

---

[16] *See Fire Ins. Exchange v. Therkelsen*, 27 P.3d 555 (Utah 2001); *Nova Cas. Co. v. Able Constr., Inc.*, 983 F.2d 575 (Utah 1999); *H.E. Davis & Sons, Inc. v. North Pac. Ins. Co.*, 248 F.Supp.2d 1079 (D. Utah 2002).

[17] *See Scottsdale Ins. Co. v. Starks Bros. Moving & Hauling Co.*, 1995 WL 642830 (N.D.Ill.); *Greater New York Mut. Ins. Co. v. Prof. Sec. Bureau, Ltd.*, 402 N.Y.S.2d 448, 61 A.2d 975 (S.C. N.Y. 1978); *Steve Warner Corp. v. Burns Intl. Sec. Svcs., Inc.*, 527 F.2d 1025 (7th Cir. 1975); and *Country Mut. Ins. Co. v. Waldman Merc. Co., Inc.*, 430 N.E.2d 606, 609 (Ill. App. Ct. 1981).

[18] *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 335, 339-40 (5th Cir. 1997).

C.     Timely notice and "substantial prejudice."

Defendant argues that coverage under the Policy is barred because it was prejudiced by its insured's failure to give it timely notice, in breach of its requirements for coverage.  The parties differ in their claims of *when* Defendant received notice.  Although it is not certain when the insured actually gave notice to Defendant, the clear evidence before the Court, viewed in the light most favorable to Defendant, is that Defendant acknowledged its insured's claim in writing no later than January 8, 2004 – the same day default judgment was entered by Judge Sam in the related case.  Defendant accepted tender of its insured's defense, effective January 15, 2004.

However, setting aside any disputes over when notice was received by Defendant, Utah law clarifies that failure to give notice of proof of loss "does not bar recovery under the Policy if the insurer fails to show that it was prejudiced by the failure."[19]  Utah case law clarifies that prejudice from lack of notice must be "actual, rather than theoretical."[20]

The Court finds that the evidence clearly establishes that Defendant did not suffer prejudice that could bar recover under the Policy.  As found by Judge Sam, and affirmed by the Tenth Circuit, relief from the default judgment was not expeditiously sought.  Defendant had actual notice in time to have affected the outcome of the related case.  The Court notes that the one party who clearly had no responsibility for the delay was Plaintiffs, as they faced legal and procedural hurdles in perfecting their claim (default, bankruptcy, etc.).  Any prejudice suffered by

---

[19] Utah Code Ann. § 31A-21-312(2).

[20] *State Farm Mut. Ins. Co. v. Green*, 2003 UT 48, 898 P.3d 97.

Defendant is of its own making, and does not rise to the level of "substantial prejudice" that would bar recovery by Plaintiffs here.

In sum, as to the cross-motions for summary judgment, the Court finds, as a matter of law, that there are no disputed issues of material fact, and that summary judgment is appropriate in this case.

II.    MOTION TO STRIKE.

Given its ruling on the Motions for Summary Judgment, the Court will deny Defendant's Motion to Strike Rampton Affidavit.[21]  Specifically, the Court's consideration of the prejudice issue did not require consideration of Mr. Rampton's testimony, as the Court viewed the evidence in the light most favorable to Defendant.  The Court does not consider the issue relevant as this discrete timing dispute is not material to the Court's determination, and is further rendered MOOT by the Court's finding that there was no "substantial prejudice" or, rather, that any prejudice was of Defendant's own making and not attributable to Plaintiffs.

<u>CONCLUSION</u>

Based upon the above, it is hereby

ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 23) is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 27) is DENIED.  It is further

---

[21] Docket No. 33.

ORDERED that judgment will issue in favor of Plaintiffs and against Defendant for the amounts pleaded in the Amended Complaint in this case and awarded in the default judgment in the related case (Civil No. 2:03-CV-952 DS).  It is further

ORDERED that Defendant's Motion to Strike (Docket No. 33) is MOOT.

The Clerk of Court is directed to enter judgment in conformity with this Order, and to close this case forthwith.

SO ORDERED.

DATED  March 26, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge